UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STRYKER SALES, LLC,
And
STRYKER EMPLOYMENT COMPANY, LLC

                Plaintiffs,

v.

PRODIGY SURGICAL DISTRIBUTION, INC.,
And
BRAZEN SOLUTIONS, LLC,

                Defendants.

**COMPLAINT**

Case No.: [_____]

---

Stryker Sales, LLC and Stryker Employment Company, LLC ("Stryker" or "Plaintiffs"), by and through their attorneys, Woods Oviatt Gilman LLP, as and for the Complaint against Defendants, Prodigy Surgical Distribution, Inc., ("Prodigy") and Brazen Solutions, LLC, ("Brazen") (collectively "Defendants") states as follows:

## PARTIES

1. Stryker Sales, LLC ("Stryker Sales") is a Michigan limited liability company that is authorized to conduct business in the State of New York and has an office for conducting business in Rochester, New York.

2. Stryker Employment Company, LLC (Stryker Employment") is a Michigan limited liability company that is authorized to conduct business in the State of New York and has an office for conducting business in Rochester, New York.

3. Stryker Sales and Stryker Employment (together, "Stryker") each have as their sole member Howmedica Osteonics Corp.

4. Howmedica Osteonics Corp. is wholly owned subsidiary of Stryker Corp.

{9483839: }

5. Defendant Prodigy is a New York State Corporation with offices for conducting business in East Aurora, New York and Rochester, New York.

6. Defendant Brazen is a New York State Corporation with an office for conducting business in Pittsford, New York.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action because the trade secrets that have been misappropriated by the Defendants are related to products or services that are used or intended for use in interstate or foreign commerce. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §1331 as this is a civil action arising under the Constitution, Laws or Treaties of the Unites States, and in particular, 18 U.S.C §1831 *et. seq*.

8. Venue is proper pursuant to 28 U.S.C §1391 as all defendants reside or have an office for conducting business in the Western District of New York, and because a substantial part of the events or omissions given rise to the claim occurred within this district.

## STATEMENT OF FACTS

9. Stryker is a publicly traded company that was incorporated in 1946 and has developed multiple medical products that assist with the treatment and recovery of patients with various medical conditions.

10. Stryker, together with its subsidiaries and affiliates, invents, designs, manufactures and sells medical devices and offers related services, such as consulting with respect to the design and construction of surgical centers and hospital operating rooms.

11. Stryker is a global leader in the highly competitive market for the development, manufacture, and sale of instruments and tools used to conduct minimally invasive visualization during surgeries, along with related products and services

12. Stryker sells products and services that are used or intended to be used in interstate or foreign commerce.

13. Upon information and belief, Brazen was formed in March 2023 by former Stryker employee Dottie Boehlert, and is a distributor of medical devices and services which directly compete with Stryker, including products manufactured by Skytron and Arthrex.

14. While employed by Stryker, Ms. Boehlert was assigned to a different geographic territory than Mr. Hollway.

15. Upon information and belief, Prodigy is a distributor of medical devices and services, and in particular, distributes Arthrex brand surgical equipment, which is a direct competitor of Stryker.

### MATTHEW HOLLWAY'S EMPLOYMENT AT STRYKER

16. Stryker employed Matthew Hollway from May, 2001 through July, 2023 as a Sales Representative.

17. While employed by Stryker, Mr. Hollway was subject to a Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement for U.S. Employees, dated April 17, 2020 (the "Agreement").

18. Pursuant to the Agreement, Mr. Hollway acknowledged that Stryker's Confidential Information included any non-public information in any way learned by him during his employment with Stryker, including, but no limited to:

> (a) prices, renewal dates and other detailed terms of customer or supplier contracts and proposals;
> (b) information concerning Stryker's customers, clients, referral sources and vendors, and potential customers, clients, referral sources and vendors, including, but no limited to, names of these entities or their employees or representatives, preferences, needs or requirements, purchasing or sales histories, or other customer or client-specific information;

      (c) …
      (d) pricing policies, methods of delivering services and products and marketing and sales plans or strategies…

19. Mr. Hollway agreed that he would not "disclose, use, disseminate, identify by topic or subject, lecture upon or publish Confidential Information" and that the prohibition would continue after the termination of this employment at Stryker terminates for any reason.

20. The Agreement contained a non-solicitation clause, in which Mr. Hollway agreed that he would not, for a period of one year following the termination of his employment at Stryker:

    (i) solicit, contact or sell any Conflicting Product or Service to a Stryker Customer;
    (ii) solicit, contact or sell any product or service to a Stryker Customer that competes with or is similar to any Stryker product or service;
    (iii) divert, entice or otherwise take away from Stryker the business or patronage of any Stryker Customer; or
    (iv) solicit or induce any vendor, supplier or Stryker Customer to terminate or reduce its relationship with Stryker.

21. The Agreement also contained a non-competition clause that prohibited Mr. Hollway from providing services, directly or indirectly, to any 'Conflicting Organization' in which the services he provided "could enhance the use or marketability of a Conflicting Product or Service by application of Confidential Information which I have had access to during my employment or while working for a Stryker agency."

22. The geographical scope of the non-competition clause was limited to the geographic area, territory, branch or assigned customer accounts that was covered, directly or indirectly, by Mr. Hollway during the 24-month period preceding the termination of his employment at Stryker.

23. During the last twenty four months of his employment with Stryker as a Sales Representative, Mr. Hollway worked in the limited geographic territory of the Syracuse, NY region.

24. While employed by Stryker, Mr. Hollway became intimately familiar with the identity and contact information of the key persons at the approximately forty (40) Stryker customers in the Syracuse area, along with those customers' needs, and Stryker's pricing, pricing strategies, and profit margins for those customers.

25. If a competitor were to gain access to, or make use of, Stryker's Confidential Information and trade secrets through Hollway, it could severely undercut Stryker in the market by, for example, using his knowledge of Stryker's pricing and products to revise its own pricing models and product capabilities to better compete with Stryker.

26. While working as a Sales Representative for Stryker, Mr. Hollway was rewarded for his work with lucrative compensation, and had been paid approximately $300,000 per year.

## HOLLWAY IS COMPETING WITH STRYKER

27. On or about July 2, 2024, Mr. Hollway abruptly tendered his resignation, effective immediately.

28. Shortly thereafter, Stryker learned that Mr. Hollway was employed by a competitor and on September 11, 2023, Stryker sent him a letter demanding that he cease and desist from violating the Agreement.

29. Mr. Hollway responded to the letter through his counsel, who represented both Mr. Hollway and Brazen, and acknowledged that Mr. Hollway was a part owner of Brazen.

30. On or about October 23, 2023, after communicating with Mr. Hollway through his counsel, Mr. Hollway's counsel notified Stryker that, "Matt has tendered his company's equity interest back to Brazen and he is going to comply with the terms of the Non-Solicit Agreement."

## THE SUNY UPSTATE PROJECT

31. In 2022, the State University of New York Upstate Hospital ("SUNY Upstate") issued a Request for Proposal ("RFP") for the installation of an operating room video routing platform in its surgical center (the "Project"). The Project was to be implemented in three phases worth several million dollars, and the bid for the first phase was awarded in 2022.

32. While employed by Stryker, Mr. Hollway drafted and submitted Stryker's bid for phase one of the Project, and that bid was awarded to Stryker. Mr. Hollway received a sizeable commission for that sale.

33. During the course of his work as a Sales Representative for Stryker, Mr. Hollway received Confidential Information regarding the Project, including the Stryker's pricing for phase one of the Project, and Stryker's strategy for winning all three phases of the Project.

34. Having drafted the bid for phase one of the Project on behalf of Stryker, Mr. Hollway knows the amount of Stryker's bid, as well as the intricacies of the project that are not generally known outside of Stryker.

35. SUNY Upstate issued the RFP for the second phase of the Project, and bids for that portion of the Project were due in November 2023.

36. Prior to the termination of his employment at Stryker, Mr. Hollway was aware of, and was preparing to submit a bid to SUNY Upstate for phase two of the Project on behalf of Stryker.

37. Stryker submitted a bid to SUNY Upstate for phase two of the Project in November 2023, and was verbally notified that it won the bid in or about December 2023.

38. In December 2023, SUNY Upstate contacted Stryker and requested that Stryker provide a quote for some additional parts that were not included in the RFP, which Stryker provided.

39. In January 2024, SUNY Upstate again contacted Stryker and requested a discount to the price that Stryker bid for phase two of the Project, and requested that Stryker provide prices for each individual piece of equipment, and notified Stryker that anticipated issuing a purchase order for the bid in early February 2024.

40. On or about February 9, 2024, the Director of Hospital Purchasing at SUNY Upstate sent an email addressed to Dottie Boehlert at Brazen (Dottie.Boehlert@Brazen-Solutions.com) and to Matt Hollway at his former Stryker email address (matt.hollway@stryker.com), stating as follows:

> Hi Dottie,
> Would you or matt [*sic*] be able to complete the attached? We want to be sure we do an apples to apples comparison.

41. Attached to the email was an Excel spreadsheet entitled "SUNY – Phase II – 1788 Upgrade", and contained one column for Stryker Product numbers, and corresponding columns for the competing Arthrex Product and Arthrex Product Prices.

42. Upon information and belief, Ms. Boehlert is the owner of Defendant Brazen.

43. The email and attachment clearly indicate that Ms. Boehlert and Mr. Holloway were working together and were in communication with SUNY Upstate in order to submit a bid competing with Stryker's bid for phase two of the Project.

44. Upon information and belief, SUNY Upstate did not realize that it was sending the email to Mr. Hollway at his Stryker email address and instead, mistakenly believed that it was sending the email to him at the address of his new employer.

45. Upon information and belief, Mr. Hollway is currently employed by Defendant Prodigy, and was employed by Prodigy when the February 9, 2024 email was sent to Mr. Hollway and Ms. Boehlert.

46. Upon information and belief, Arthrex distributes its products through Prodigy, and Prodigy distributes those products through Brazen.

47. Upon information and belief, Mr. Hollway is currently employed by Prodigy and is working with Brazen to submit a bid in competition with Stryker on the Project.

48. Upon information and belief, Mr. Hollway has highly sensitive, confidential information that belongs to Stryker. Specifically, Mr. Hollway has information related to the amount of money that Stryker bid for phase two the Project, and is familiar with Stryker's pricing and overall strategy for bidding on all three phases of the Project.

49. Due to the fact that Mr. Hollway has all of the confidential and sensitive information that belongs to Stryker related to Stryker's bid on the Project, he has placed Prodigy and Brazen at a commercially competitive advantage over Stryker, because he has both Stryker's pricing and the pricing to be issued by Prodigy and or Brazen. Mr. Hollway only has this information because of his former employment at Stryker.

50. Mr. Hollway was provided access to this highly confidential information as part of his employment with Stryker. In an effort to guard this information from being disclosed outside of Stryker, Stryker, among other actions, had Mr. Hollway execute the Agreement.

51. The Agreement requires that any dispute or litigation between Mr. Hollway and Stryker be venued and exclusively take place in Michigan.

52. Stryker has commenced litigation against Mr. Hollway in Michigan. In particular, the litigation in Michigan is related to Mr. Hollway's violations of the Agreement pertaining to the

use of Stryker's confidential information related to Stryker's customers and in particular, the Project.

53. Upon information and belief, Mr. Hollway has confidential and proprietary information belonging to Stryker, including but not limited to the following: the identity and contact information for the key purchasing persons at Stryker's clients; the pricing charged by Stryker to its clients; Stryker's pricing policies; the detailed terms of Stryker's agreements with its customers; the needs and preferences of Stryker's clients; and the purchasing history of those clients.

54. Upon information and belief, this information is not publicly known outside of Stryker, and is not generally publicly available. This information constitutes a trade secret as that term is defined in 18 U.S.C §1836 *et. seq*.

55. Upon information and belief, Mr. Hollway, when he was a part owner and employee of Brazen, shared these trade secrets with Brazen.

56. Upon information and belief, Brazen continues to have this trade secret information in its possession, and is using, or is planning to use the information to its competitive advantage and to Stryker's competitive disadvantage.

57. Upon information and belief, Mr. Hollway has also shared this trade secret information with his current employer, Prodigy.

58. Upon information and belief, Prodigy is now using, or intends to use, the trade secret information supplied to it by Mr. Hollway to its competitive advantage and to Stryker's competitive disadvantage.

## AS AND FOR OUR FIRST CAUSE OF ACTION
## (VIOLATION OF DEFEND TRADE SECRETS ACT)

59. Plaintiff repeats and re-alleges each and every paragraph above as fully set forth herein.

60. Defendants Prodigy and Brazen have in their possession misappropriated trade secrets, as that term is defined in the Defend Trade Secrets Act (18 U.S.C. §1839).

61. The trade secrets that have been misappropriated by the Defendants are related to a product or service that is used in or attended for use in interstate or foreign commerce.

62. Stryker has taken steps to protect against the misappropriation of the trade secrets, including but not limited to: restricting access to the information only to persons at Stryker who need the information to perform their job duties, and requiring the persons who have access to the trade secrets, such as Mr. Hollway, execute the Agreement to prevent them from using the information outside of their employment at Stryker.

63. The trade secret information that is in the Defendants' possession or control is not generally known outside of Stryker without the use of improper means, and has independent economic value to any person or entity who wishes to compete with Stryker. Defendants Prodigy and Brazen can obtain economic value from the use of the trade secrets.

64. Defendants Prodigy and Brazen, through their relationships with Mr. Hollway, have obtained Stryker's trade secrets, which were misappropriated by Mr. Hollway without the authorization of Stryker.

65. Defendants Prodigy and Brazen are now using, or intend to use, the trade secrets in connection with the sale of medical equipment and or related products or services in direct competition with Stryker.

66. As a result of the acquisition of the misappropriated trade secrets by Defendants, the trade secrets are now in the possession of, or are intended to be in the possession of, Defendants Prodigy and Brazen.

67. The trade secrets were willfully and maliciously misappropriated in bad faith by Defendants Prodigy and Brazen.

68. As a result of the foregoing, Stryker has been damaged in an amount to be determined at trial.

69. Stryker demands relief against all Defendants for violating 18 U.S.C §1831 *et. seq.* in the form of damages for actual loss caused by the misappropriation, exemplary damages in the amount of two times the amount of actual damages, an injunction directing the Defendants to delete, destroy or otherwise disable the use or access of the trade secrets describes herein, injunction prohibiting the Defendants from forever using the misappropriated trade secrets, an injunction prohibiting the Defendants from submitting any bid for products or services related to the misappropriated trade secrets in competition with Stryker, and for attorney's fees for the willful and malicious misappropriation of said trade secrets.

## AS AND FOR OUR SECOND CAUSE OF ACTION
## (UNJUST ENRICHMENT)

70. Plaintiff repeats and re-alleges each and every paragraph above as fully set forth herein.

71. Stryker has invested and expended considerable time, effort and money in building its database of information pertaining to its customers and potential customers and in particular, SUNY Upstate.

72. Brazen and Prodigy, without authorization from Stryker, have taken possession of confidential and propriety customer information and upon information and belief, have attempted

to use or intend to use the information in order to sell medical products or services to the customers of Stryker in direct competition with Stryker.

73. The information that has been taken and obtained by Brazen and Prodigy has value to the Defendants and the Defendants have no authority to take or use this information.

74. Defendants Brazen and Prodigy have been unjustly enriched in that they have taken information that belongs to Stryker and, upon information and belief, have used or intend to use that information to sell medical products or services to Stryker's customers, including but not limited to SUNY Upstate.

75. Neither Brazen nor Prodigy have paid any consideration to Stryker, nor has either Defendant offered to pay or consideration to Stryker.

76. Defendants Brazen and Prodigy have come into possession of Stryker's confidential and proprietary information under such circumstances that in equity and good conscience they ought not to retain it.

77. As a result of these actions, Defendants have been unjustly enriched to the detriment of Stryker, and Stryker is entitled to an Order directing the Defendants to delete, destroy or otherwise disable the use or access of the confidential information and trade secrets described herein, and in an injunction prohibiting the Defendants from forever using the misappropriated trade secrets and confidential information, and for money damages.

## AS AND FOR OUR THIRD CAUSE OF ACTION
### (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS – AGAINST DEFENDANT BRAZEN)

78. Plaintiff repeats and re-alleges each and every paragraph above as fully set forth herein.

79. The Agreement is an existing and valid contract between Stryker and Mr. Holloway.

80. Upon information and belief, Defendant Brazen had knowledge of that contract through Mr. Hollway's ownership of, and employment with, Brazen.

81. Defendant Brazen intentionally procured the breach of the Agreement, without justification, by inducing Mr. Hollway to submit a bid on the Project in competition with Stryker.

82. The Agreement between Mr. Hollway and Stryker has been breached by Mr. Hollway.

83. As a result of these actions, Stryker has suffered damages as a result of the breach of the Agreement, and Stryker is entitled to an Order enjoining and prohibiting Defendant Brazen from submitting any bids or competing with Stryker utilizing any information provided by Mr. Hollway, and for money damages incurred by Stryker as a result of the breach of the Agreement.

**WHEREAS**, Plaintiff Stryker demands judgement as follows:

A. On the first cause of action against Defendants Prodigy and Brazen for violation of the Defend Trade Secrets Act, for a preliminary and permanent injunction requiring all Defendants to delete all confidential and proprietary trade secret information in their possession; prohibiting all Defendants from using said confidential and proprietary trade secret information; prohibiting all Defendants form submitting any bid for the sale of goods or services in competition with Stryker using the trade secret information; and if the misappropriation of trade

secrets is determined by be in bad faith, willful or malicious, for exemplary damage sin the amount of two times the amount of actual damages, along with attorneys' fees incurred by Stryker; and

    B. On its second cause of action against all Defendants for unjust enrichment, for money damages incurred by Stryker, and order granting an injunction prohibiting the Defendants from using the misappropriated information; and

    C. On the third cause of action against Defendant Brazen for tortious interference with contractual relations, for an Order enjoining and prohibiting Defendant Brazen from submitting any bids or competing with Stryker utilizing any information provided by Mr. Hollway, and for many damages incurred by Stryker as a result of the breach of the Agreement; and

    D. For attorney's fees and costs incurred herein; and

    E. For such other further relief as the Court deems just and proper.

DATED: February 26, 2024

By: _____
Andrew J. Ryan, Esq.
*Attorney for Plaintiff*
1900 Bausch & Lomb Place
Rochester, New York 14604
585-987-2800
aryan@woodsoviatt.com

{9483839: }